**WETTERER et, Plaintiffs, v. HAMILTON COUNTY BOARD OF HEALTH et, Defendants.**

Common Pleas Court, Hamilton County.

No. A-142226. Decided January 10, 1955.

J. W. Brown, Ben Gettler, for plaintiffs.

C. Watson Hover, County Pros., Raymond C. Wetherell, Asst. County Pros., for defendants.

Bert H. Long, Smith & Latimer, Frost & Jacobs, Wesselman & Eyrich, Amici Curiae.

## OPINION

By HESS, J.:

This cause was submitted to the Court on the pleadings, evidence, arguments and briefs of counsel.

The Plumber's and Gas Fitters Local Union No. 59, Cincinnati Master Plumber's Association, certain piping contractors represented by attorneys Wesselman and Eyrich, and certain manufacturing enterprises concerned with the issues herein represented by attorneys Frost and Jacobs, have been permitted to file briefs as Amicus Curiae.

The petition was filed on March 22, 1954, and on April 2, 1954, all the parties defendant named in the petition except the Hamilton County Board of Health and the E. J. Nolan Corporation were dismissed from this action. A temporary restraining order was issued on March 22,

1954, as prayed for in the petition, and the matter is now before this court on its merits for a permanent restraining order and declaratory judgment.

The E. J. Nolan Corporation is in default for answer.

The petition as amended questions the legality of the statutes of Ohio relating to plumbing, and the Rules and Regulations for Installation and Inspection of Plumbing within the Hamilton County General Health District, as adopted by the Hamilton County Board of Health on August 13, 1951, and amended June 9, 1953. (Plaintiffs' exhibits 1 and 2.)

There is no material dispute on the facts. The defendants were content to submit the matter on the evidence submitted by the plaintiffs.

The General Electric Company is engaged in the experimentation and building of jet powered engines. It requires certain plumbing and piping facilities known as cells to carry on its function. The General Electric Company employed the E. J. Nolan Corporation to erect a portion of the jet cells described in the petition and the Nolan Corporation employed certain craftsmen known as pipe fitters to perform a portion of the work. Plans and specifications for the jet cell facilities to be built for the General Electric Company by the Nolan Corporation were submitted to the County Board of Health of Hamilton County, Ohio, for approval and permit.

A building permit was issued and work was begun. When the permit was issued, or at a time prior to the beginning of this action, the plumbing inspector of the Hamilton County Board of Health designated the work submitted on a portion of the plans to be done by E. J. Nolan Corporation to be plumbing work.

Thereafter, pursuant to inspection or information otherwise obtained, a stop order and prosecution were threatened by the Hamilton County Board of Health authority to General Electric Company and E. J. Nolan Corporation which would in effect stop the employment of pipe fitting craftsmen who, it was claimed, were performing plumbing work without a plumber's license as required by Sections 1 and 2 of the Rules and Regulations for Installation and Inspection of Plumbing, Hamilton County Board of Health.

This action was filed to declare the rights of the parties and to enjoin the operation or issuance of the threatened stop order and prosecutions on the premises that the statutes of Ohio and the regulations of the Hamilton County Board of Health relating to installation and inspection of plumbing are unconstitutional, null and void; that they are arbitrary; that they are without lawful standards of operation, and do not apply to industrial piping heretofore and presently performed by craftsmen known in the trade as pipefitters.

The Hamilton County Board of Health denies the statutes of Ohio, or its regulations are unlawful or that it has performed any unlawful act in proceeding with licensing of plumbers, inspections of plumbing work or directing that licensed plumbers perform the work as set forth in its rules and regulations adopted August 13, 1951, and as amended June 9, 1953.

The pleadings, arguments and briefs of all the parties are directed

to the legality of the statutes relating to plumbing (§§3709.01 etc., 707.1, 715.27, 3707.01 etc., R. C.), and the Rules and Regulations for Installation and Inspection of Plumbing promulgated and adopted by the Hamilton County General Health District on August 13, 1951, and as amended June 9, 1953.

More specifically the plaintiffs, except James P. Maher, presented evidence to establish the claim they are employed by the E. J. Nolan Company on a job at the General Electric Company where they are installing industrial pipe and fixtures; that they have done similar work for many years; that their employers are satisfied with their services; that the Rules and Regulations for the installation and inspection of plumbing adopted by the Hamilton County Board of Health prevent the plaintiffs from performing certain work in that they unlawfully require the plaintiffs to become plumbers or journeyman plumbers; that the Board of Plumbing Examiners established by the Hamilton County Board of Health is an unlawful delegation of authority; that the Hamilton County Board of Health and the statutes of Ohio have not established lawful standards for the examination and licensing of plumbers and journeyman plumbers; and that the Hamilton County Board of Health has abused its discretion by attempting to establish rules and regulations which prohibit plaintiffs from doing plumbing work, and thus threaten their individual freedom to work at their chosen trade as pipefitters.

The permit referred to in the record is not in evidence. The threatened stop order and prosecutions which brought about this action is not in evidence, although there is evidence the Board of Health fully intends to enforce its regulations.

The record discloses there is much confusion relative to what is plumbing on the forty-eight test cells being erected by the General Electric Company and what may be designated as pipe fitting:

"Q. You read under the heading 'Plumbing Fixtures. Plumbing fixtures are receptacles intended to receive and discharge water, liquid or water carried wastes . . .'

"A. That's right.

"Q. Now, a toilet bowl would be a plumbing fixture, would it not?

"A. That's right.

"Q. A urinal would be?

"A. That's right.

"Q. A sink would be, would it not?

"A. That's right.

"Q. Those are specific formed fixtures as distinglished from piping?

"A. That's right.

"Q. You wouldn't say that pipe is a fixture, would you?

"A. It could be transferred into a fixture by assembling it as such.

"Q. Now, is pipe a fixture?

"MR. LONG: I submit he answered that if the Court please.

"A. Pipe itself?

"Q. Yes.

"THE COURT: He may answer if he knows.

"A. I said pipe could be transferred into a fixture if it were fabricated.

"THE COURT: The question is, is pipe itself a fixture.

"THE WITNESS: No.

"Q. Thank you, Mr. Springmyer. So that in this test cell system of piping the piping is not a plumbing fixture, is it?

"A. This piping is all run - - -

"Q. Just answer the question, Mr. Springmyer.

"MR. LONG: Well, now, he's answering the question.

"THE COURT: Well, now, you asked the question; let him answer.

"MR. BROWN: We'll read the question back so that you can understand clearly what was meant.

"(The question was read as follows: 'So that in this test cell system of piping the piping is not a plumbing fixture, is it?')

"A. The piping is a plumbing system that connects those fixtures.

"Q. Now, Mr. Springmyer, is the piping a plumbing fixture?

"A. No.

"Q. Thank you."

**BY THE COURT:**

"Q. May I break in for a question. Did you issue the permit for the erection of this piping or whatever it was at the G. E. cells?

"A. Your Honor, I issued a permit for the collection of those wastes that empty into this oil separator line. I did not - - -

"Q. Well, didn't your permit require all plumbers or journeyman plumbers or apprentices to be employed on this job?

"A. That's right.

"Q. Well, was there work in which plumbers, masters, journeymen and apprentices were not required?

"A. Not on any of the work that I issued a permit for. However, there was other work that wasn't covered by our regulation that they may have been employed on.

"Q. Do you designate pipe for pipe, fixture for fixture that shall be done by plumbers and those that are to be done by pipefitters?

"A. Only those that are covered by the regulation are to be done by plumbers.

"Q. Was that done in this instance in the matter of General Electric?

"A. If the Court will permit me to explain this meeting between Nolan Company and myself along about February of this year.

"Q. Yes.

"A. At that time it seemed like Nolan Company had signed two agreements or two contracts with two organizations, and it seemed like these two organizations were both claiming the same work, and since Nolan Company realized that it was covered under the plumbing regulation and that they may become involved in other troubles other than the employment of these - - one or the other of these organizations' men, they asked me to definitely establish the fact that it was plumbing. They brought the prints in; I reviewed the prints - -

"Q. What was plumbing?

"A. The installation of these drains.

"Q. Drains or the whole business?

"A. The drain lines.

"Q. The drain lines only?

"A. That's right, the drain lines only. So I assured them that it was plumbing, and they immediately made application for a permit and were granted such. They asked me if that meant then that they would have to employ plumbers on the job, and I told them that according to our regulation it would be required for them to use plumbers on this job.

"Q. To do what?

"A. To install these drain lines according to the application of which they had submitted and a permit granted. Of course, since that the injunction was asked for and granted and I'm inclined to believe that the work was installed by other than plumbers.

"Q. Now, I'll ask you again on this same job did you designate what was to be done by pipefitters or did you designate what was to be done by plumbers and thus assume that the other work would be subject to pipefitters?

"A. I only designated that work which came under the regulation and was to be done by plumbers.

"Q. Be done by plumbers?

"A. That's right."

"THE COURT: All right.

BY MR. BROWN:

"Q. Mr. Springmyer, you have referred to drains. By drains you mean the entire application as submitted to you by Mr. Barbara, do you not?

"A. I mean only - -

"Q. You call all this drains, don't you?

"A. No. There's building walls and everything else shown on this drawing.

"Q. Well, I mean, I'm talking about the piping, Mr. Springmyer.

"A. Well, the piping; if you want it enumerated I can sketch it for you.

"Q. Is there any piping in here that Mr. Barbara came to you to ask your opinion about that you did not designate as plumbing under the caption drains?

"A. No. Mr. Barbara came in and drew a sketch like so, and he says, 'Does this come under the plumbing regulation? This, this, this, this and this (indicating)?'

"Q. You went through the whole thing and told him it all did?

"A. That's right. And, of course, I told him, 'Yes, that comes under the plumbing regulation.'

"Q. You refer to that entire system of piping collectively, as drains, do you not?

"A. This drainage system, yes.

"Q. So that under your statement all the piping connections for these 48 test cells leading to the oil separator and the oil separator all is plumbing?

"A. That's right."

BY THE COURT:

"Q. Is there anything else but those pipes?

"A. Yes, sir. I think that's only a small portion of the work, a very small portion.

"Q. You mean what's left or what is plumbing?

"A. No. This plumbing is only a small portion of the work on test cells.

"THE COURT: All right."

BY MR. BROWN:

"Q. What other piping is there in the test cells, Mr. Springmyer?

"A. I think you mentioned them yourself. I think oil, and is there steam and solvents, isn't there, and isn't there a sprinkler system and fire fighting equipment systems and that sort of thing.

"Q. Fire fighting equipment is not plumbing, is it?

"A. No.

"Q. Even though fresh water is used?

"A. There's a stipulation for taking - - Fire fighting equipment can be many things. It can be car docks, it can be water - -

"Q. I mean water fire fighting.

"A. It depends, of course, on how it's connected with the fresh water supply."

To declare the rights of the parties herein it is necessary to determine the power conferred by the legislature upon a Health District, and the action of the Board of Health of Hamilton County, General Health District, in adopting Sections 1 and 2, relating to examination and licensing of Master Plumbers and Journeyman Plumbers in Hamilton County, Ohio.

To declare the rights and duties of the parties the following five issues are presented, and they will be discussed in the order listed;

(One) Is the legislation creating the Health Districts in Ohio a valid exercise of legislative power?

(Two) Does the Hamilton County Board of Health have the right to proceed with examination, licensing and registering of plumbers?

(Three) Does the Hamilton County Board of Health have the authority to create a Board of Examiners of Plumbers to which it may delegate authority to examine applicants for license as master and journeyman plumbers and to revoke or suspend licenses.

(Four) Are the prerequisites for eligibility to take the examinations set forth in the rules and regulations sufficient standards for conducting examinations?

(Five) Are the rules and regulations for permits, installation and inspection of plumbing promulgated by the Hamilton County Board of Health arbitrary, unreasonable and discriminatory?

(One) The question of the right of the legislature to regulate plumbing must be considered to be a valid exercise of police power. Citations are numerous supporting the authority of the State to enact laws governing and regulating any activity which has a direct bearing on the public health and general welfare. The following citations are sufficient:

Williams et al, v. Scudder et al, 102 Oh St 305; State v. Gardner, 58 Oh St 599; Company, Ex Parte, 106 Oh St 55.

In keeping with this constitutional right the legislature enacted §3709.01 et seq, R. C., dividing the State into General Health Districts; providing for a Board of Health for each district; and, outlining the duties of such boards of health. This same police power was delegated to Municipal Corporations when the legislature enacted §715.27 R. C.

"Sec. 715.27 R. C. Any Municipal Corporation may: * * * provide for the licensing of house movers, electrical contractors, plumbers, sewer tappers and vault cleaners."

And then the legislature enacted §3709.36 R. C., in which it gave the district boards of health the same rights and powers given to Municipal Corporation Boards of Health.

"Sec. 3709.36 R. C. The board of health of a city or general health district hereby created shall exercise all the powers and perform all the duties formerly conferred and imposed by law upon the board of health of a municipal corporation, and all such powers, duties, procedure, and penalties for violation of the sanitary regulations of a board of health of a municipal corporation are transferred to the board of health of a city or general health district by §§2923.18, 3701.10, 3701.29, 3707.08, 3707.14, 3707.16, 3707.47 and 3709.01 to 3709.36 inclusive, R. C."

When §3709.36 R. C., was enacted the legislature intended the district boards of health should conform to the provisions of §§3707.01 and 3709.21 R. C., concerning rules and regulations involving the general public.

"Sec. 3707.01 R. C. * * * In cities having such departments or exercising such powers, the council, by ordinance shall prescribe such rules and regulations as are approved by the board of health and shall provide for their enforcement."

"Sec. 3709.21 R. C. All orders and regulations not for the government of the board, but intended for the general public, shall be adopted, recorded and certified as are ordinances of municipal corporations and the record thereof shall be given in all courts of the state the same force and effect as is given such ordinances * * *."

These statutes must be considered as a unit and construed to give the district boards of health in Ohio the same rights as are given to municipal boards of health, and in addition thereto the district boards of health have the right to make reasonable rules to carry out their duties for the protection of the general health and welfare of the public in their districts.

(Two) Having determined the statutes establishing the district boards of health and prescribing their duties to be a valid exercise of legislative authority we now consider whether the Hamilton County District Board of Health has the right to conduct examination of plumbers, cause them to be registered, issue permits for work to be done by them, and inspect their work.

The legislative authority on the question of licensing of plumbers by district boards of health is brief. The authority for licensing is contained in §715.27 R. C. This section provides for "* * * licensing of house movers, electrical contractors, **plumbers,** sewer tappers and vault cleaners." (Emphasis added.)

There is no legislative direction on how the district boards of health shall proceed with licensing of plumbers. However, the legislature did delegate to the district boards of health the right to make rules and regulations in relation thereto when it encated §3709.21 R. C., which provides:

"the board of health may make such orders and regulations as are necessary for its own government, for the public health, the prevention or restriction of disease, and the prevention, abatement, or suppression of nuisances. * * *"

When **Chapters 3707** and **3709 R. C.**, concerning city and district boards of health are read with §715.27 R. C., it becomes evident the legislature intended that district boards of health would and should promulgate and adopt reasonable rules and regulations to implement the licensing of plumbers, and the district boards of health are charged with that duty.

(Three) Since it was the intention of the legislature to authorize the district boards of health to license plumbers the question of whether the Hamilton County District Board of Health has the right to create and delegate to a Board of Examiners of Plumbers the duties imposed upon it is presented.

This question calls for a consideration of the "Resolution to Amend Section 1 and Section 2 of the Rules and Regulations for Installation and Inspection of Plumbing in the Hamilton County, Ohio, General District dated June 9, 1953. The pertinent sections of that resolution are as follows, and will be referred to as lettered:

"Section 1.

"A. All plumbing and private sewage disposal installation, repairs and replacements within the Hamilton County General Health District shall be done only by permit issued by the Hamilton County District Board of Health and under the supervision of a certified licensed master plumber, licensed by the Hamilton County Health Department.

"B. Application for permits shall be submitted for approval prior to the starting of work (on forms supplied by the Hamilton County Health Department).

"C. Where a sewer connection is available, sewer permit number must appear on plumbing application. Where sewer is NOT available, septic tank application must accompany plumbing application.

"D. Zoning certificates and building permit numbers must accompany all applications for plumbing permits.

"Section 2.

"EXAMINATION AND LICENSING OF MASTER PLUMBERS AND JOURNEYMAN PLUMBERS.

"A. Board of Plumbing Examiners. There shall be a Board of Plumbing Examiners of the District Board of Health of Hamilton County, Ohio. This Board of Examiners shall consist of the Chief Plumbing Inspector of the Hamilton County Board of Health and three other members appointed by said Board of Health. Such members of the Board of Examiners, other than the Chief Plumbing Inspector, shall be appointed for a term of three years, except at the inception the appoint-

ment shall be for a period of one, two and three years respectively with an annual appointment thereafter for a fixed term of three years, and be subject to removal at any time by the unanimous vote of the members of the Board of Health for cause or otherwise. Two of the three examiners appointed by the Board of Health shall be master plumbers, and one a journeyman plumber and all are to be residents of the Hamilton County General Health District. The Chief Plumbing Inspector of the Board of Health is to serve as secretary of the Board and keep its records, books and papers. * * *"

"B. Master and Journeyman Plumbers to be Licensed. No person shall engage in the business of plumbing as a master plumber or advertise himself as a plumber by displaying a business sign or otherwise, or hold himself out in any way for employment as a journeyman plumber, unless he shall have previously been duly certified and licensed in accordance with the regulations adopted by the Hamilton County Board of Health.

"C. Apprentice Plumbers to be Registered. Persons serving an apprenticeship in the plumbing trade and doing work as such in the Hamilton County General Health District shall be registered as a plumber apprentice with the Hamilton County Health Department and work under the supervision of a licensed plumber at all times.

"D. Plumbing Operations to be Performed by Licensed Plumbers. It shall be unlawful for any person other than a certified licensed master plumber, or a certified licensed journeyman plumber or registered plumber apprentice in the employ of and under the supervision of a licensed master plumber, to install, alter, repair, or make any connection with any water or water distributing pipe, sewer, drain, soil, waste or vent pipe or with any pipe connected therewith, or to enter any waste pipe, soil pipe, or house drain, by fracture for rodding purposes, within or in connection with any building.

"E. Examination of Applicants for Plumber's Licenses. Any person desiring to engage in the business of master plumber or to work at the trade of journeyman plumber, shall be examined as to his qualifications and competency by the Board of Examiners of Plumbers.

"F. Eligibility for Examination as Journeyman Plumber. Any person shall be eligible for examination as journeyman plumber who:

"1. Has been duly registered as an apprentice plumber with the Hamilton County Board of Health in accordance with the rules established by the Board of Health and who has been actually engaged for at least five (5) years in work as a registered plumber's apprentice; or,

"2. Has completed training in an accredited plumbers vocational school and has at least three years' practical experience in plumbing work; or

"3. Has at least five (5) years' practical experience in plumbing work; or

"4. Holds a certificate as a licensed journeyman plumber.

"5. Affidavits proving the above qualifications shall be attached to application.

"G. Eligibility for Examination as Master Plumber. Any person shall be eligible for examination as master plumber who:

"1. Has been in actual employment for at least five (5) years as a certified licensed journeyman plumber; or

"2. Holds a certificate as a licensed master plumber; or,

"3. Has a professional engineering license and such experience in the field of plumbing as shall be approved by the Board of Plumbing Examiners; or,

"4. Has had five (5) years of such experience in the design of plumbing or drainage systems or their construction as shall be approved by the Board of Plumbing Examiners.

"5. Affidavits proving the above qualifications shall be attached to application.

"H. Examination Fees. Each application for examination as master plumber shall be accompanied by an examination fee of $25.00. Each application for examination as journeyman plumber shall be accompanied by an examination fee of $5.00.

"I. Certificate of Competency. If, after examination the Board of Examiners of plumbers shall be satisfied with the competency of an applicant, it shall certify to the Hamilton County Health Commissioners that such applicant has passed his examination for master plumber or journeyman plumber, as the case may be.

"O. Revocation or Suspension of License. The license of any journeyman plumber may be revoked or suspended for any of the following causes:

"1. Incompetency, careless workmanship or dereliction of duty;

"2. Misrepresentation in obtaining a license or permit;

"3. Fraudulent use of license;

"4. Failure to obey any notice or order of the department having jurisdiction;

"5. Any other failure to comply with the plumbing provisions of the plumbing code adopted by the Hamilton County Board of Health.

"P. The license of any master plumber may be revoked for any of the foregoing causes and for any of the following to wit:

"1. Employment of a person to perform plumbing operations not certified or registered in accordance with the provisions of this regulation.

"2. Proceeding with work prior to the time a permit has been issued.

"3. Failure to notify proper authorities or division for inspection of water, sewer or plumbing construction requiring inspection.

"Q. Revocation or Suspension Procedure. No plumber's license either master or journeyman or apprentice registration shall be suspended or revoked without a hearing or the opportunity to be heard before the Board of Examiners of Plumbers. When the Board shall certify to the Health Commissioner that the charges as to one or more of the items set forth in Section 2-N have been sustained, the latter shall suspend or revoke the license or permission in accordance with such certification of the Board of Examiners. The Board's certificate shall state whether or not the person affected may apply for a new license and if so the length of time before the application may be made. Where permission is granted to apply for a new license the procedure shall be the same as for a new applicant.

"R. Appeals, Revocation or Suspension Procedure. Any applicant, who has filed an application for examination with the Hamilton County Board of Health and the Board of Examiners, after being notified by the Health Commission of the filing of such application, fails to give such examination to the applicant within thirty (30) days after receiving notice of such aplication for examination, then in that event, the County Board of Health, may at its discretion hold the examination. Any applicant who has failed to pass an examination given by the Board of Examiners, may appeal within thirty (30) days, to the Hamilton County Board of Health, for a re-examination, which the Hamilton County Board of Health, at its discretion may give. No plumber's license, either master or journeyman, shall be suspended or revoked without a hearing or the opportunity to be heard before the Board of Examiners of Plumbers. Any individual whose plumber's license, either master or journeyman, has been recommended for suspension by the Board of Examiners may within thirty (30) days, appeal to the Hamilton County Board of Health, for a rehearing on the suspension, or revocation of said license, and the Hamilton County Board of Health, shall have power to either suspend or revoke said license, or reverse the ruling of the Board of Examiners. No license shall be revoked without the approval of the Hamilton County Board of Health. When the Hamilton County Board of Health shall certify to the Health Commissioner that charges as to any one or more of the items set forth in Section 12 have been sustained, the Health Commissioner shall thereupon revoke or suspend the license of such individual."

In Section 2-A, quoted above, the Board of Health of Hamilton County General Health District created a Board of Examiners of Plumbing and then proceeded to vest that Board of Examiners with discretionary and quasi-judicial authority which is conferred on the Board of Health only by statute.

The claim of the defendants that the Board of Examiners performs merely administrative functions is not supported by the delegation of power established in the resolution. Section 2-E provides that—

"Any person desiring to engage in the business of master plumber or to work at the trade of journeyman plumber, shall be examined as to his qualifications and competency by the Board of Examiners of Plumbers."

There is no provision or language in Section 2 indicating the Board of Health exercises any control over examinations to be given by the Board of Examiners except the establishment of rules of eligibility for applicants desiring to take an examination.

To further establish the complete independence of the Board of Examiners the Board of Health provided in Section 2-Q that:

"No plumber's license either master or journeyman or apprentice registration shall be suspended or revoked without a hearing or the opportunity to be heard before the Board of Examiners of Plumbers. * * *";

that when the Board, referring to the Board of Examiners, "shall certify to the Health Commissioner that the charges as to one or more

of the items set forth in Section 2-N have been sustained the latter shall suspend or revoke the license or permission in accordance with such certificate of the Board of Examiners;" and, then the Board of Health delegated authority to the Board of Examiners to determine "whether or not the person affected may apply for a new license and, if so, the length of time before the application may be made."

A reading of Sections 1 and 2 of the resolution dated June 9, 1953, leads to the conclusion the Board of Health has delegated to the Board of Examiners of Plumbers the discretionary legislative and absolute authority to provide the subject matter of examinations, the disciplinary action to be taken against licensed plumbers and the determination of reinstatement of plumbers previously licensed.

It appears the Board of Health has established standards to be met by applicants desiring to take examinations, but there are absolutely no standards established by it upon which the Board of Health or the Board of Examiners may predicate an examination.

When the legislature provided a Board of Health of a Health District to license plumbers it left to the Board of Health, not to a Board of Examiners, the duty of establishing reasonable rules and regulations to implement such licensing.

Ministerial functions may be delegated to assistants of the Board of Health, but it is without authority to establish an independent board to perform duties imposed upon the Board of Health, except in the exercise of its police power.

It is an accepted doctrine in our constitutional law that the law-making prerogative is a sovereign power conferred by the people upon the legislative branch of the government, in a state or the nation, and cannot be delegated to other officers, boards or commissions, or branch of government. Thus, the General Assembly of Ohio cannot delegate its legislative power, but may confer administrative power on an executive, a board, or commission. **Matz, Admr. v. J. C. Curtis Cartage, 132 Oh St 271.**

In the Matz case, supra, it is held that:

"as a general rule a law which confers discretion on a board without establishing any standards for guidance is a delegation of legislative power and unconstitutional; but when the discretion to be exercised relates to a police regulation for the protection of the public health or general welfare, and it is impossible or impracticable to provide such standards, and to do so would defeat the legislation sought to be accomplished, legislation may be valid and constitutional without such restrictions and limitations."

**Weber v. Board of Health, 148 Oh St 389.**

It is recognized that there are occasions where the nature of the problem makes it impossible to lay down standards, and as a result rule-making bodies must be allowed a wide discretion without anything as their guide except the general policy of the lawmaking body and the law that such bodies must not legislate or makes rules which are unreasonable, discriminatory or contrary to constitutional rights.

Certainly it cannot be successfully argued that the establishing of

standards, rules and regulations for examinations upon which applicants for plumbers' licenses are to be examined are so impossible, or impracticable of formulation as to require complete delegation by the Board of Health to a Board of Examiners for Plumbing.

The evil of no standards for examinations is apparent when examinations which have been given by the Board of Examiners are considered. The record discloses that all applicants have been given the same questions regardless of when the examinations were held, and that no consideration was given to questions other than to submit the same examination which previously had been given by the Board of Health of Cincinnati.

It therefore follows that the delegation of complete authority to the Board of Examiners without any standards upon which an examination may be predicated is an unlawful delegation of authority by the Board of Health.

(Four) That brings the Court to a consideration of whether the standards for eligibility to take an examination, as set forth in Sections 2-F and 2-G, are unreasonable, discriminatory or contrary to constitutional rights.

Although great emphasis is placed on years of experience required and little consideration given to the knowledge acquired by applicants before becoming eligible to take the examination, the record does not support a finding that the standards of eligibility are unreasonable or discriminatory.

(Five) Since it has been determined that plumbing is subject to regulation by public authority under its police power the question of the reasonableness of the permit and inspection provision of the regulations, and the rules and regulations generally as amended June 9, 1953, are presented.

Section 2-D deals with plumbing operations to be performed by licensed plumbers. As written, this section appears to be arbitrary and unreasonable in that it prohibits any householder from making any plumbing repair regardless of its relation to the general health and welfare of anyone concerned. Strictly construed it prevents any householder from replacing a washer on a faucet. Not only does this section prevent such minor repairs being made by an occupant of premises, but it makes him subject to penal action.

The fact that the provisions of Section 2-D may not be enforced in connection with minor repairs which could not reasonably be expected to affect the health of any individual or affect the general welfare of the public is no excuse for such legislation.

Section 1A provides that all plumbing "shall be done only by permit issued by the Hamilton County District Board of Health under supervision of a certified licensed master plumber" and Section 1B makes it necessary for anyone to make application for permits prior to starting work, and on forms supplied by the Hamilton County Health Department.

Thus if it becomes necessary to replace a faucet or washer an occupant of any home in the district would be required to procure the

proper form, make application, pay the permit fee, receive a permit, and then employ a licensed plumber in order to comply with the rules and regulations of the Board of Health, and avoid possible prosecution.

The absurdity of such a condition is self-evident.

The fact that plumbing may be described to be "The art of installing in buildings the pipes, fixtures and other apparatus for bringing in the safe water supply and removing liquid and water carried wastes" is not sufficient reason for a Board of Health to completely restrict all work in connection therewith to a licensed plumber regardless of its actual relation to the health and general welfare of the public.

It therefore follows that the rules and regulations set forth in Sections 1 and 2 which restrict every phase of plumbing, as above described, to licensed plumbers only is so unreasonable as to render them invalid

Having discussed the issues present, they may be summarized as follows:

(One) The legislation creating the Health Districts in Ohio is a valid exercise of legislative power.

(Two) The Hamilton County District Board of Health has the right, power and duty to enact reasonable rules and regulations to provide for licensing and registration of plumbers.

(Three) The Hamilton County Board of Health exceeded its authority when it created and delegated to the Board of Examiners of Plumbers powers and duties restricted to the Board of Health and the actions of the Board of Examiners are a nullity.

(Four) The prerequisites for eligibility to take an examination for plumbers' license are not shown to be an unreasonable exercise of discretion by the Board of Health.

(Five) The rules and regulations set forth in Sections 1 and 2, which restrict to plumbers only work in connection with plumbing which does not have a reasonable relation to the health and general welfare of the public are invalid.

It therefore follows that until such time as valid standards, rules and regulations are adopted by the Hamilton County District Board of Health in keeping with statutory authority the restraining order heretofore issued herein shall remain in force.

\* \* \* \* \*

The pleadings, arguments and briefs of counsel herein indicate there is great and urgent need for serious consideration by representatives of plumbers, pipefitters, and contractors to establish reasonable lines of demarcation on work requiring the services of both plumbers and pipefitters.

Progress in science and industry should not be impeded by antagonism and strife brought about by jurisdictional labor disputes, or a desire on behalf of any group of craftsmen to destroy another by encroachment or color of legal authority.

Contractors are entitled to proceed with contracts with full knowledge of their labor relations.

An entry may be presented in accordance with the issues determined herein.